UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MATTHEW ADAMS, | Case No. 5:14-cv-04330-PSG |
| Plaintiff, | **ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND REMAND** |
| v. | |
| PNC BANK, N.A., et al. | |
| Defendants. | **(Re: Docket Nos. 4, 7, 17)** |

Over a year ago, Plaintiff Matthew Adams sought a modification of a loan he took out against his property at 4394 Planet Circle, Union City, CA 94587.  Believing he was misled into stopping payments on the loan in order to qualify, Adams filed suit against Defendants PNC Bank, N.A., S.B.S. Trust Deed Network and CNF Realty Partners LLC, alleging harm from the notice of default, notice of trustee's sale and the sale itself that followed.  Because Adams's allegations fail to pass muster under Federal Rule of Civil Procedure 12(b)(6), Defendants' motions to dismiss are GRANTED.  Because Adams's proposed Second Amended Complaint is substantially unchanged, Adams's motion for leave to amend and remand is DENIED.

**I.**

Adams took out a primary loan on his property from Bank of America, N.A.  Bank of America is not a party to this suit.  He subsequently took out a second loan with National City

1

Bank, which was later acquired by Defendant PNC Bank.[1]  Adams was thereafter successful in acquiring a loan modification from Bank of America on his primary loan.[2]  Several years later, PNC assigned Adams's loan to Defendant CNF, who later substituted Defendant S.B.S as trustee.[3]

On November 7, 2013, a Notice of Default was recorded against Adams's property.[4] Adams alleges that about a month earlier, he had inquired into applying for a loan modification on his second loan.[5]  Adams further contends that Defendants advised him against making any additional payments on his outstanding second balance of $31,325.50 until his loan modification was finalized.[6]  Ultimately, a Notice of Trustee's Sale was recorded against Adams's property in February 2014, which was followed shortly thereafter by a Trustee's Sale.[7]

This suit followed.  Adams originally filed the suit in Santa Clara Superior Court, but after Adams added federal claims, Defendants removed to this court.  As currently pleaded, Adams alleges six causes of action against all Defendants: (1) promissory estoppel, (2) negligence, (3) breach of contract, (4) rescission in equity, (5) wrongful foreclosure and (6) unfair business practices.

---

[1] *See* Docket No. 1 at Exh. D-1, ¶ 36.

[2] *See id.* at Exh. D-1, ¶ 42.

[3] *See id.* at Exh. D-1, ¶¶ 38-39.

[4] *See id.* at Exh. D-1, ¶¶ 46-47.

[5] *See id.* at Exh. D-1, ¶¶ 34, 54.

[6] *See id.* at Exh. D-1, ¶¶ 46-47, 54.

[7] *See id.* at Exh. D-1, ¶¶ 49-50.

## II.

This court has subject matter jurisdiction over Adams's claims pursuant to 28 U.S.C. §§ 1331 and 1367. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

As a preliminary matter, SBS and CNF request judicial notice of several documents, including various deeds of trust and a notice of trustee's sale, as well as copies of pleadings in this case and copies of U.S. Department of Treasury webpages.[8] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[9] Because these documents are in the public record and are not subject to reasonable dispute, the court takes judicial notice of them.

At this stage of the case, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[10] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[11] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact or unreasonable inferences.[12]

---

[8] *See* Docket No. 8.

[9] Fed. R. Evid. 201(b).

[10] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[11] *See id.*

[12] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

3
Case No. 5:14-cv-04330-PSG
ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND REMAND

### III.

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[13] Accepting as true the factual allegations stated and drawing all inferences in his favor, if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[14] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] Against these standards, none of Adams's six claims—promissory estoppel, negligence, breach of contract, rescission in equity, wrongful foreclosure and unfair business practices—pass muster.

*First*, Adams brings a claim of promissory estoppel against all Defendants. To show promissory estoppel, a plaintiff must plead four elements: "(1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance."[16] Under California law, "[t]he party claiming [promissory] estoppel must specifically plead all facts relied on to establish its elements."[17]

In pleading his cause of action, Adams is anything but clear. He fails to identify any

---

[13] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[14] *Twombly*, 550 U.S. at 570.

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[16] *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1198 (S.D. Cal. 2010) (citing *BoonRawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010)). *See also Cotta v. City and C'nty of San Francisco*, 157 Cal. App. 4th 1550, 1566 (2007); *see U.S. Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 905 (2005); *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1185 (1998); *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890 (1976).

[17] *Smith v. City and C'nty of San Francisco*, 225 Cal. App. 3d 38, 48 (1990).

4
Case No. 5:14-cv-04330-PSG
ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND REMAND

defendant individually.  Rather, he lodges all claims against all Defendants.[18]  This is particularly problematic because Defendants never were concurrently responsible for the disputed loan account.  And Adams only alleges one instance of misrepresentation to undergird his promissory estoppel claim: statements "made during October 2013 to March 2014" that "a loan modification was forthcoming" and "that no foreclosure sale would take place during his evaluation."[19]  Not only does Adams fail to identify to which specific Defendant he is referring, but he also fails to allege any specific individuals with whom he spoke or any facts about specific misrepresentations.[20]

Adams's complaint is similarly void of particularized allegations.  While it may be true that courts have found an oral promise to postpone a foreclosure sale sufficient to establish a claim of promissory estoppel, the authority Adams cites approves such a cause of action when supported by a sufficiently particularized complaint.[21]  Adams's allegations of promissory estoppel are broad generalizations that are simply not plausible under Rule 12(b)(6).

*Second*, Adams brings a claim for negligence against all Defendants.  As above, Adams fails to particularize his allegations to any specific Defendant—a fact which, on its own, warrants dismissal.  But even if Adams had managed to appropriately target his negligence claim, it would still fail.

To substantiate a negligence claim, a plaintiff must be able to show (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation and (4) damages.[22]  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement

---

[18] *See* Docket No. 1 at Exh. D-1, ¶¶ 52-53 ("Promissory Estoppel Against all Defendants").

[19] *See id.* at Exh. D-1, ¶ 54.

[20] *Cf. Alimena v. Vericrest Financial, Inc.*, 964 F. Supp. 2d 1200, 1219-20 (E.D. Cal. 2013).

[21] *See, e.g.*, *Aceves v. U.S. Bank*, 192 Cal. App. 4th 218, 222-24 (2011).

[22] *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).

5
Case No. 5:14-cv-04330-PSG
ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND REMAND

in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."[23]  While Adams argues that a financial institution owes a duty of care to a borrower when the borrower is seeking a loan modification, Adams never specifically alleged in his complaint that he submitted a loan modification application.  Without the counseling and advice that accompanies the loan modification process, Adams cannot show that any of the Defendants owed him a duty of care.

In determining whether a given financial institution owed a duty of care to a customer for a given transaction, courts conduct a multi-factor balancing test that considers: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm."[24]

As to the first factor, even though the prospect of receiving a loan modification might have affected Adams, the extent to which it did is remote because Adams has further failed to allege that he even submitted a loan modification application.  The merits of Adams's potential loan modification thus were never even considered.  This is surely an even more persuasive set of facts than those in *Ottolini v. Bank of* America, where the court found no duty because "the loan modification application was never acted on."[25]  Here it is not alleged that it was even submitted.[26]

---

[23] *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 898 (2013).

[24] *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1098 (1991).

[25] *See Ottolini v. Bank of America, et al.*, Case No. 11-cv-00477, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011).

[26] Indeed, Adams alleges that Bank of America, N.A.—who is not a party to the litigation—agreed to assist him in restructuring his loan, but the most he alleges about Defendants is that he contacted them "to inform them about [his] financial difficulties and to request assistance in the form of a loan modification."  Docket No. 1 at Exh. D-1, ¶ 41-42.

In terms of foreseeability, there is no indication that Adams's application for loan modification—had he submitted it—was likely to be approved.[27]  It was likewise not foreseeable that the alleged mismanagement of his account would contribute to any ensuing harm.

As for injury, Adams does allege the he suffered a cognizable injury when his property was sold at a trustee's sale.[28]  But this is not an injury that Defendants caused.  Rather, Adams owed over $30,000 in mortgage payments.  Defendants merely acted within their rights to recoup their money.  As to moral blame, Adams's allegations are at best rife with conclusory assertions that Defendants refused to help him find a solution to his financial woes.  This is insufficient.

The final consideration is whether finding duty here would create a misguided policy going forward.  As articulated in *Ottolini*, this factor cuts both ways.[29]  On the one hand, finding that financial institutions have a duty to manage all elements of a loan modification in a timely and efficient manner would benefit borrowers pursuing a modification.  On the other hand, creating a heightened duty would almost certainly disincentivize financial institutions from providing loan modifications in the first place.

Ultimately, the factors weigh against finding any duty, especially where as here—as in *Ottolini*—the application for loan modification never progressed to a concrete stage.  Under such circumstances, "there is no indication of the likelihood that such an application would have been granted."[30]  Without any duty, there can be no breach, and thus no negligence claim.

***Third***, Adams alleges a breach of contract claim against all Defendants.  Notably, in Adams's proposed second amended complaint—which is attached to his motion for leave to file

---

[27] Adams alleges that Defendants informed him that his account was under "active review" but nothing more. *See id.* at Exh. D-1, ¶ 45.

[28] *See id.* at Exh. D-1, ¶ 50.

[29] *See Ottolini*, 2011 WL 3652501 at *7.

[30] *Id.*

7

Case No. 5:14-cv-04330-PSG
ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR LEAVE TO AMEND AND REMAND

it—Adams only alleges claims of promissory estoppel, negligence and unfair business practices, all but admitting that his remaining claims—breach of contract, rescission in equity and wrongful foreclosures—do not pass muster.[31] But even absent such a glaring admission, Adams's breach of contract claim fails.

Adams's breach of contract claim is premised on the assumption that all Defendants entered into two types of agreements with the U.S. Department of Treasury—a Commitment to Modification Program agreement and a Securities Purchase agreement[32]—and that he was a third-party beneficiary to these agreements. To state a breach of contract claim as a third-party beneficiary, Adams must show that the "contract [was] made expressly for [his] benefit" and that the parties have not rescinded it.[33] But regardless of whether Adams can show that he was an intended third-party beneficiary, Adams has failed to plead that there was in fact a contract that could even be breached because neither CNF nor S.B.S. are participants in any program, nor that they are parties to any agreement.[34] Because Adams has failed to allege any valid contract, as to CNF and S.B.S, there can simply be no breach.

As to PNC, while it is a party to the underlying HAMP program, Adams does not qualify as an intended third party beneficiary. "To qualify as an intended beneficiary, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party."[35] The Ninth Circuit has further held that parties that benefit from

---

[31] *See* Docket No. 17.

[32] *See* Docket No. 1 at Exh. D-1, ¶¶ 60-61.

[33] Cal. Civ. Code § 1559; *see California Emergency Physicians Med. Group v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1138 (2003) ("A plaintiff must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary.").

[34] *See* Docket No. 8 at Exhs. 11-12.

[35] *Cnt'y of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009).

government contracts are presumed incidental beneficiaries and are not permitted to pursue a breach of contract claim absent explicit permission.[36]  There is no indication that Congress intended any such result.  Adams's claim thus fails as to PNC as well.

*Fourth*, Adams brings a claim of rescission in equity against all Defendants.[37]  Because the only conceivable party who could provide Adams with this particular remedy—Malibu Partners—was previously dismissed from this case with prejudice,[38] the claim is plainly implausible.

*Fifth*, Adams alleges wrongful foreclosure against all Defendants.[39]  Adams bases his allegations on Defendants' obligation to provide a loan modification.  But there is no requirement under any statutory framework that a financial institution approve a loan modification.  While it is true that Defendants may have obligations to consider a loan modification application, there is nothing wrongful or illegal about denying an application or about failing to provide the modification itself.  The claim fails on this basis alone.

*Sixth*, Adams brings a claim of unfair business practices under California's unfair competition law against all Defendants.  In order for a plaintiff to establish standing under the UCL, he must allege an "injury in fact" and that he has "lost money or property as a result of such unfair competitions."[40]  While it is true that Adams lost his property and can therefore show injury in fact, he cannot show that any action on the part of Defendants caused this injury.  Adams alleges

---

[36] *See id.*

[37] Adams omitted this claim from his proposed second amended complaint, again all but admitting that it should be dismissed.  *See* Docket No. 17.

[38] *See* Docket No. 8 at Exh. 14.

[39] Once again, Adams omitted this claim from his proposed second amended complaint, all but admitting that it should be dismissed.  *See* Docket No. 17.

[40] Bus. & Prof. Code § 17204.

that he defaulted on his second mortgage before Defendants communicated the alleged misrepresentations about loan modification. Specifically, Defendants allegedly made false statements to Adams between October 2013 and March 2014, but by October 2013, Adams had already defaulted on his mortgage payments and owed arrears of more than $30,000.[41] "Because the alleged post-default misrepresentations could not have caused [Adams's] default, [Adams] lacks standing to bring [his] UCL claim."[42]

But even if Adams could establish standing, he has failed to allege any unlawful, unfair or fraudulent predicate acts upon which a claim might be grounded. The UCL prohibits unfair competition, including, inter alia, "any unlawful, unfair or fraudulent business act."[43] The only predicate claims that Adams has alleged—his wrongful foreclosure and promissory estoppel claims—have already failed, dooming his UCL claim as well.

***Seventh***, following Defendants' filing of their motions to dismiss, Adams filed a motion for leave to amend and to remand.[44] Adams summarizes the changes he intends to make in his Second Amended Complaint: "remove all references to [HAMP] and the Emergency Economic Stabilization Act of 2008"; "remove all references to [TARP]"; "remove all references to California Civil Code sections 2923.5, 2923.6, 2923.52, 2923.53"; remove his breach of contract, rescission in equity and wrongful foreclosure causes of action; and correct the names of some captioned Defendants.[45] In support of his motion, Adams correctly points out that the Ninth

---

[41] *See* Docket No. 1 at Exh. D-1, ¶¶ 46, 54.

[42] *Morrison v. Wachovia Mortg. Corp.*, Case No. 11-cv-07948, 2012 U.S. Dist. LEXIS 38847, at *41 (C.D. Cal. Jan. 9, 2012) (citing *DeLeon v. Wells Fargo Bank, N.A.*, Case No. 10-cv-01390, 2011 U.S. Dist. LEXIS 8296, at *21 (N.D. Cal. Jan. 28, 2011)).

[43] Cal. Bus. & Prof. Code § 17200.

[44] Docket No. 17.

[45] *Id.* at 2.

Circuit allows amendments to complaints with "extreme liberality."[46] But that does not mean that every amendment can meet the requisite threshold.

Rather, there are "four factors [that are] commonly used to determine the propriety of a motion for leave to amend[:] bad faith, undue delay, prejudice to the opposing party, and futility of amendment."[47] While Adams's decision to eliminate half of the claims presented in his first amended complaint is certainly in line with the court's ruling as to those claims, the remaining claims—promissory estoppel, negligence and unfair business practices—are pleaded in substantially the same paltry manner, showing that Adams cannot cure the deficiencies in his complaint by filing this proposed second amended complaint. Even if there is no indication that leave to amend is sought out of bad faith or to create undue delay, allowing the case to proceed—especially in light of the evident futility of amendment—would prejudice Defendants. Leave to amend is denied.[48]

## IV.

Defendants' motions to dismiss are GRANTED. Adams's motion for leave to amend or remand is DENIED. The Clerk shall close the file.

**SO ORDERED.**

Dated: December 29, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[46] *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

[47] *Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 155-56 (N.D. Cal. 2005) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[48] The court thus does not reach the issue of remand.